## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,            :

                Plaintiff,            :            Civil Action No. 11-945

      v.            :            **OPINION**

$16,010.00 IN UNITED STATES            :
CURRENCY,
             Defendant in-rem.  :


**RODRIGUEZ**, District Judge:

      Presently before the Court is the United States of America's (the "government")

Motion for Entry of Default Judgment and Final Order of Forfeiture, pursuant to FED. R.

CIV. P. 55(b), against Defendant in rem $16,010.00 ("Defendant currency").  Would-be

known claimant Tyren B. Ali, Jr. a/k/a Tyreen B. Ali ("Ali") has not filed a claim within

the time required by Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime

Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, and 18 U.S.C. §

983(a)(4)(A).  For the reasons set forth below, the government's motion for Entry of

Default Judgment and Final Order of Forfeiture is granted.[1]

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

      On September 10, 2010, a West Deptford, New Jersey police officer observed a

red 2000 Chrysler 300 ("Chrysler 300" or the "vehicle") with an expired registration

about to travel south on Crown Point Road.  Compl. at ¶ 7. The officer confirmed that

the registration was expired, activated his vehicle's emergency lights, and followed the

---

[1] The Court decides the government's motion without oral argument, pursuant to
FED. R. CIV. P. 78.

Chrysler 300 to implement a motor vehicle stop.  Id.  The Chrysler 300 pulled over, and the officer obtained the driver's license, insurance card, and expired registration.  Id. at ¶¶ 7-8.  The officer identified the driver as Ali, and observed that Ali's eyes were droopy and bloodshot.  Id. at ¶ 8.  The officer also smelled a potent odor of burnt marijuana emanating from inside Ali's vehicle.  Id.

Upon the officer's request, Ali exited the vehicle.  Id. at ¶ 9.  The officer questioned him, and Ali admitted that he had been smoking marijuana earlier that night.  Id.  Ali also admitted that there was a marijuana cigarette in the vehicle's ashtray, but denied that the vehicle contained any other narcotics.  Id.  The officer then searched Ali's person and found $2720.00 total wrapped in bundles from his right front pocket and right rear pocket.  Id. at ¶ 10.  Upon questioning, Ali stated that he had obtained the money from recently selling a vehicle.  Id.  Another West Deptford police officer arrived and watched Ali while the first police officer searched the vehicle for the cause of the marijuana odor.  Id. at ¶ 11.  While searching the vehicle, the officer discovered a white package on the rear floor and several partially burnt hand-rolled cigarettes in the vehicle's ashtray.  Id.  At that time, however, the officer removed only the partially burnt hand-rolled cigarette believed to be marijuana from the vehicle's ashtray to secure it for evidence.  Id.  The officer then asked Ali to sign a consent to search form for the vehicle, but Ali refused, stating that he had already given the officer verbal consent to search the vehicle.  Id. at ¶ 12.

The officer arrested Ali for possession of marijuana under 50 grams, had the Chrysler 300 impounded, and transported him to police headquarters for processing.  Id. at ¶ 13.  At the headquarters, police seized the $2700.00 found on Ali's person and

gave him a receipt for the currency.  Id. at ¶ 14.  Ali was released on a state summons pending court at a later date and time.  Id.

On September 14, 2010, a Superior Court Judge in Gloucester County, New Jersey issued a search warrant for the Chrysler 300.  Id. at ¶ 15.  Two West Deptford Township police officers executed the search of the Chrysler 300 and found a package wrapped in a white tee shirt on the rear floor of the vehicle.  Id. at ¶ 16.  Upon further inspection, the police found a black plastic bag under the tee shirt, which revealed another black plastic bag inside that contained $16,010.00 in U.S. currency, in five bundles secured by multi-colored rubber bands.  Id.  Police also discovered an open container of Hennessy Cognac, a plastic bag containing rubber bands, and a white, lined sheet of paper that cataloged days of the week and names with assorted numbers.  Id. at ¶ 17.  According to the government, this last item is "consistent with a drug ledger".  Id.

The officers contacted a K-9 narcotic detection officer, and the K-9 detected the presence of narcotics on both the interior and the exterior of the vehicle, "specifically the front driver's seat area".  Id. at ¶ 18.  The officers continued to inspect the vehicle and discovered a 9 mm Stoeger, Model Cougar 8000, Serial Number T642908A018622, handgun behind the vehicle's air conditioner controls.  Id. at ¶ 19.  The handgun was loaded with fifteen rounds and had one round already in the chamber.[2]  Id.  The officers continued to search the vehicle and discovered a screwdriver that was presumably used to access the handgun behind the vehicle's dash area, a silver Nokia cellular telephone, and a New Jersey licence plate with the number ZRP42L registered to Lenn K Grant of

---

[2] Because of the handgun's discovery, Ali was also charged with Unlawful Possession of a Handgun and Certain Persons not to have Weapons.  Compl. at ¶ 19. Cash bail for Ali was set at $50,000 in Gloucester County, New Jersey.  Id.

Florence, New Jersey.  Id. at ¶ 20.

On September 14, 2010, the Drug Enforcement Administration (DEA) commenced administrative forfeiture proceedings against the $16,010.00 that officers discovered in the Chrysler 300.  Id. at ¶ 22.  On September 22, 2010, the $2720.00 seized from Ali's person on September 10, 2010 was returned to the West Deptford Township Police Department for processing.  Id. at ¶ 21.

On or about November 18, 2010, West Deptford police officers stopped Ali again, this time to execute an arrest warrant for possession of a stolen firearm from West Deptford on September 10, 2010.  Id. at ¶ 23.  Ali was driving a 2007 Chevy Impala registered in his name.  Id.  During that stop, officers seized $8,110.00 from Ali's person and from inside the Chevy Impala's trunk.  Id. at 24.  Ali stated that he had obtained the money from selling a 4-wheel All Terrain Vehicle (ATV), but could not produce or recall any information about the sale.  Id.

Also on November 18, 2010, a search warrant was authorized for Ali's residence at 71 Cedarwood Court, West Deptford, New Jersey.  Id. at ¶ 25.  The renter of the residence, Michelle Lewis ("Lewis"), indicated that only she and Ali resided there.  Id. Police found $30,000.00 from a safe in the master bedroom closet of the residence.  Id. Upon questioning, Lewis stated that she did not own the money found in the safe and had never seen it before.  Id.  Lewis also stated that the safe belonged to Ali and that she did not know the combination to the safe.  Id.  Police also discovered Ali's driver's license, among other identifications, in a dresser drawer found in the master bedroom. Id.

On or about November 24, 2010, Ali's counsel filed papers contesting the

forfeiture of the $16,010.00 previously seized from the Chrysler 300.  Id. at ¶ 26.

According to the government, intelligence suggests that Ali is a "drug set" manager in Camden, New Jersey.  Id. at ¶ 27.  In addition, Ali has a criminal history that consists of eleven prior drug-related convictions that include four felony convictions for drug-related offenses.  Id. at ¶ 28.  Finally, Ali's only reported employer was B&B Poultry Company, Inc. in Norma, New Jersey.  Id. at ¶ 29.  B&B Poultry Company reported a $155.52 total quarterly wage for the fourth quarter of 2007 for Ali, and since that time no records have indicated a legitimate source of income for Ali.  Id.

On February 18, 2011, the government filed a Verified Complaint in the United States District Court for the District of New Jersey against the $16,010.00 in United States currency found in the Chrysler 300 that Ali drove.  Decl. of Peter W. Gaeta with Ex. in Support of Default J. ¶ 2.  On February 23, 2011, the Clerk of the Court issued a Warrant for the Arrest In Rem of the $16,010.00, and the Drug Enforcement Administration seized the Defendant currency, pursuant to the arrest warrant.  Id. at ¶ 3.  On or about February 25, 2011, the government sent, via certified mail, return receipt requested, copies of the Verified Complaint for Forfeiture, Warrant for Arrest In Rem, and a Notice of Forfeiture to Ali's counsel, Andre A. Norwood, Jr., Esq.  Id. at ¶ 4.  Norwood received the copies on or about March 2, 2011.  Id. at ¶ 5.

No claim has been filed for the Defendant currency within the time period required by Rule G(5)(a) of the Supplemental Rules for Admiralty and Maritime Claims, Federal Rules of Civil Procedure, and 18 U.S.C. § 983(a)(4)(A).  Id. at ¶ 8.  The Clerk of the Court entered the Defendant currency's default on May 16, 2011.  Dkt. Entry No. 6.

## II. JURISDICTION

This Court possesses subject matter jurisdiction over the government's motion pursuant to 28 U.S.C. § 1345, because the United States is the plaintiff in this matter. See 28 U.S.C. § 1345. This Court also possesses subject matter jurisdiction over the government's motion pursuant to 28 U.S.C. § 1331, because the Controlled Substances Act, 21 U.S.C. § 881, et. seq., is a federal statute that arises under the laws of the United States. See 28 U.S.C. § 1331.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 and Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Actions, Federal Rules of Civil Procedure, govern a court's decision to enter default judgment against a defendant in asset forfeiture cases. See FED. R. CIV. P. 55; U.S.C. Admiralty and Maritime Claims R. G.

Obtaining default judgment against a defendant is a two-step process. First, the Clerk of the Court must enter the defendant's default after the properly served defendant has failed to plead or otherwise defend himself. FED. R. CIV. P. 55(a). To obtain default judgment, the government must have directly notified any known potential claimants of the defendant currency by sending notice of the action and a copy of the complaint to the known potential claimants. U.S.C. Admiralty and Maritime Claims R. G(4)(b)(i). In asset forfeiture cases, the Clerk of the Court must enter default against the defendant currency after the properly notified potential claimant has failed to answer or file a Notice of Claim. See, e.g., U.S. v. $487, 825.00, Civil No. 05-2481, 2006 LEXIS 33219, at *6 (D.N.J. May 24, 2006) (entering default against the defendant currency is appropriate where "no answer or motion in lieu of an answer had been filed"). Second, the Clerk, on the plaintiff's request, may enter default judgment against

the defendant for the amount and costs the plaintiff requests if the plaintiff's claim is for a sum certain or a sum that can be made certain by computation. FED. R. CIV. P. 55(b)(1). In all other cases, the plaintiff must apply to the court for a default judgment. FED. R. CIV. P. 55(b)(2).

The plaintiff's unchallenged facts set forth in the complaint must establish a legitimate cause of action before default judgment can be entered. DirecTV, Inc. v. Decroce, 332 F.Supp.2d 715, 717 (D.N.J. 2004), rev'd on other grounds sub. nom. DirecTV, Inc. v. Pepe, 431 F.3d 162 (3d Cir. 2005). Courts must accept the plaintiff's well-pleaded factual allegations as true, but need not accept the plaintiff's factual allegations regarding damages as true. Chanel, Inc. v. Gordashevsky, 558 F.Supp.2d 532, 536 (D.N.J. 2008) (citing Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

A plaintiff is not entitled to entry of default judgment against a defendant as of right, because the entry of such judgment is left to the discretion of the district court. Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984). The Court's discretion accounts for the Third Circuit's preference that "cases be disposed of on the merits whenever practicable." Id. at 1181. Thus, the Court considers three criteria: (1) whether the plaintiff would suffer prejudice if the default judgment were denied, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's own culpable conduct caused his delay in responding to the Complaint. See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).


**IV. DISCUSSION**

7

The government is authorized to bring this action against the Defendant currency pursuant to the Controlled Substances Act, 21 U.S.C. § 881(a)(6), which subjects to forfeiture to the United States all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance.  21 U.S.C. § 881(a)(6).  Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, and 18 U.S.C. § 983 govern civil asset forfeiture actions in rem and therefore govern in this action.

**A. Requirements under Rule G**

Pursuant to Rule G, the government must satisfy certain requirements in order to properly bring a forfeiture action against a defendant in rem.  First, the government must file a Verified Complaint that states the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue.  See U.S.C. Admiralty and Maritime Claims R. G(2).  The Verified Complaint must describe the property with reasonable particularity; and, if the property is tangible, state its location when any seizure occurred as well as the property's location when the action was filed, if different from where the property was seized.  Id.  The Verified Complaint must also identify the statute under which the forfeiture action is brought and state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.  Id.

Second, if the property is already in a government agency's possession, custody, or control, the Clerk of the Court must issue a warrant to arrest the property before the government can seize it from its administrative agency for any judicial forfeiture

8

proceedings.  Id. at 3(b).  Once the arrest warrant is issued, then the government may arrest the property pursuant to the warrant.  Id. at 3(c).

Finally, the government must publish notice about the action for any potential claimants of the property that it does not know and must directly notify any potential claimants that it does know.  U.S.C. Admiralty and Maritime Claims R. G(4).  For potential claimants of the property that the government does not know, the government must publish notice within a reasonable time after the Verified Complaint is filed, and it can publish notice on an official internet government forfeiture site for at least thirty consecutive days.  Id. at 4(a)(iv)(C).  For potential claimants of the property that the government does know, the government must send notice of the action and a copy of the Verified Complaint to the claimants no later than the time for filing a claim under Rule G.  Id. at (5)(a)(ii).

To make a claim for the defendant property and to avoid forfeiture of the defendant property, potential claimants must file a Claim under penalty of perjury that conforms to Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, and 18 U.S.C. § 983(a)(4)(A).  See U.S.C. Admiralty and Maritime Claims R. G(5)(a); 18 U.S.C. § 983(a)(4)(A).

Rule G(5)(a) requires that the potential claimant of the property file a claim in the court where the action is pending that identifies the specific property claimed, identifies the claimant, states the claimant's interest in the property, be signed by the claimant under penalty of perjury, and be served on the government's attorney.  See U.S.C. Admiralty and Maritime Claims R. G (5)(a).  Title 18 U.S.C. § 983 (a)(4)(A)

9

requires that the potential claimant of the property file the claim no later than thirty days after the date of service of the government's Verified Complaint or no later than thirty days after the date of final publication of notice of the filing of the Verified Complaint.  See 18 U.S.C. § 983(a)(4)(A).

On September 14, 2010, the DEA commenced administrative forfeiture proceedings against the Defendant currency.  Compl. at ¶ 22.  In response, Ali, represented through his counsel, filed papers contesting the forfeiture.  Id. at ¶ 26.  However, Ali's claim in the administrative forfeiture proceeding cannot serve as a substitute for his claim in the present judicial forfeiture proceeding under Rule C(6), Federal Rules of Civil Procedure, that also governs Actions in Rem.  See U.S. v. $31, 852.38 in U.S. Currency, 183 Fed.Appx. 237, 240-241 (3d Cir. 2006).  Therefore, in order to make a proper claim for the Defendant currency in the present judicial forfeiture proceeding, Ali must file a separate claim that satisfies the requirements set forth in Rule G(5)(a).  See U.S.C. Admiralty and Maritime Claims R. G(5)(a).

**B. Propriety of Entry of Default Judgment**

On February 18, 2011, the government filed a Verified Complaint for Forfeiture In Rem against the Defendant currency.  Dkt. Entry No. 1.  The Complaint states the grounds for subject matter jurisdiction, in rem jurisdiction over the defendant property, and venue.  Compl. at ¶¶ 3-5.  It describes the property with reasonable particularity in that it provides a breakdown of the Defendant currency[3]; and because the property is tangible, states its location when it was seized.  Id. at ¶ 16.  The Verified Complaint also

---

[3] The currency consists of 12 $100 bills, 487 $20 bills, 339 $10 bills, 190 $5 bills, and 230 $1 bills.  Compl. at ¶ 16.

identifies the statute under which the forfeiture action is brought and states sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.  Id. at ¶ 2; ¶¶ 16-18.

Also on February 18, 2011, the Clerk of the Court issued a warrant to arrest the Defendant property.  Dkt. Entry No. 2.  Pursuant to the warrant, the government seized the Defendant property and commenced judicial forfeiture proceedings against it.  Id. at ¶ 3.  Finally, the government published notice about the action for any potential claimants whom it did not know and directly notified the potential claimant, Ali, whom it did know.  Decl. of Peter W. Gaeta with Ex. in Support of Default J. ¶¶ 4-6.

First, the government published notice of the action within a reasonable time, eight days after the Verified Complaint was filed, and published notice on an official internet government forfeiture website, www.forfeiture.gov, for thirty consecutive days.  See Gov. Ex. B.

Second, the government directly notified Ali, the Defendant currency's known potential claimant, by sending notice of the action and a copy of the Verified Complaint to him thorough his counsel, Andre A. Norwood, on or about February 25, 2011.  Decl. of Peter W. Gaeta with Ex. in Support of Default J. ¶ 4.  This notice complies with Rule G(5)(a)(ii)(B), because the government sent it before it published notice of the forfeiture action on www.forfeiture.gov, its official internet government forfeiture website.

Ali has not filed a claim for the Defendant currency in this matter.  Although he has filed a claim in the administrative forfeiture proceeding, that claim does not satisfy the requirements of Rule C(6), Federal Rules of Civil Procedure.  See U.S. v. $31, 852.38 in U.S. Currency, 183 Fed.Appx. 237, 240-241 (3d Cir. 2006).  The Clerk of the Court

11

entered Ali's default on May 16, 2011, and the government's Verified Complaint has established a legitimate cause of action against the Defendant currency.  <u>See generally</u>, Dkt. Entry No. 6 and Compl.

The Court finds that entry of default judgment is proper, because two of the three criteria considered when evaluating the propriety of default judgment weigh in favor of the government.  First, the government would suffer prejudice if default judgment were denied, due to the fact that it has no other remedy against the Defendant currency.  Second, Ali has not asserted a meritorious defense, since he has failed to answer.  Finally, Ali is presumably aware of the government's claim, since he filed a claim in the administrative forfeiture proceeding and counsel represents him in this proceeding.  Because Ali has not answered, the Court does not know whether Ali's own culpable conduct caused his delay in responding to the Complaint.  Thus, the Court considers two of the three criteria for entry of default judgment and determines that entry of default judgment is appropriate.

## CONCLUSION

Based on the foregoing, the government's Motion for Default Judgment will be granted.

An appropriate Order will issue this date.


    /s/ Joseph H. Rodriguez
HON. JOSEPH H. RODRIGUEZ,
United States District Judge


DATED: July 13, 2011

12